The Honorable David Gibbons Prosecuting Attorney Fifth Judicial District Post Office Box 3080 Russellville, AR 72811
Dear Mr. Gibbons:
You have requested my opinion concerning a proposed agreement between the City of Hector and Pope County regarding the prosecution of misdemeanor offenses that occur within the Hector city limits.
You indicate that currently, misdemeanors that occur within the city limits of Hector are processed by the Hector Police Department and are prosecuted by the Hector City Attorney in the Hector City Court, which was established pursuant to A.C.A. § 16-18-110 in December of 1995.
The City of Hector now proposes to cease operation of the city court, and has proposed an agreement with Pope County, which would contain the following terms:
 • The City of Hector would maintain a police department, but all misdemeanors that occur within the city limits of Hector would be prosecuted in the Pope County District Court.
 • The Deputy Prosecuting Attorney for Pope County would prosecute the actions on behalf of the City of Hector.
 • All fees, fines, court costs and other monies collected as a result of the prosecutions would be distributed as if the arrests were made by a Pope County Deputy sheriff for offenses which occurred within the county.
 • The City of Hector would not be responsible for the cost of incarceration of any person arrested within the city limits and subsequently detained in the Pope County Detention Center.
Your questions concerning the proposed agreement are:
 (1) Can a city of the second class terminate its city court and still maintain a police department?
(2) Do the terms of the proposed agreement violate Arkansas law?
(3) What is the impact of Act 1032 of 2003 on the proposed agreement?
RESPONSE
As an initial matter, I must point out I am not in a position to construe the specific provisions of any particular contract. Such as task lies within the purview of the interested parties and of the judicial branch. However, I am able to opine in response to your questions to the extent that they raise questions of state law. This opinion, however, should not be interpreted as a comment on the enforceability of the particular provisions of the proposed contract you have described, or of the legality of their application in any particular factual context.
Question 1 — Can a city of the second class terminate its city court andstill maintain a police department?
It is my opinion that a city of the second class can class terminate its city court and still maintain a police department.
Amendment 80 to the Arkansas Constitution re-structured the entire judiciary in Arkansas and created "District Courts" to assume, on January 1, 2005, the jurisdiction previously exercised by the municipal courts, corporation courts, police courts, justice of the peace courts, and courts of common pleas. Amend. 80, § 19(B)(2). The Amendment also states:
 City Courts shall continue in existence after the effective date of this Amendment unless such City Court is abolished by the governing body of the city or by appropriate action of the General Assembly. Immediately upon abolition of such City Court, the jurisdiction of the City Court shall vest in the nearest District Court in the county where the city is located.
Ark. Const., Am. 80, § 19(B)(2) (emphasis added).
The above-quoted language clearly contemplates that any city having a city court has the authority to abolish that city court.[1] I must acknowledge that the Arkansas Supreme Court held in City of Cabot v.Thompson, 286 Ark. 395, 692 S.W.2d 235 (1985), that a city of the first class could not abolish its municipal court. The court reasoned that although the power to legislate normally implies the power to repeal, this general rule is inapplicable where the legislative body has acted within the frame of a narrow grant of authority (such as the narrow power to create municipal courts). It is my opinion that because the City ofCabot decision pre-dated Amendment 80, and because of the above-quoted language from Amendment 80 concerning the abolition of city courts, theCity of Cabot case does not support a conclusion that cities cannot abolish their city courts.[2]
Regarding the maintenance of a police department after abolition of the city court, it is my opinion that the authority of a city of the second class to maintain a police department is entirely independent from its authority to create or abolish a city court. Cities of the second class are granted explicit statutory authority to create police departments and departments of public safety. See A.C.A. §§ 14-42-401 et seq.; 14-42-421, -422; 14-52-103. These specific statutory grants of authority are not tied in any respect to the maintenance by the city of a city court.
For the foregoing reasons, I conclude that a city of the second class can abolish its city court, and can maintain its police department.
Question 2 — Do the terms of the proposed agreement violate Arkansaslaw?
As indicated at the outset of this opinion, I cannot construe the specific provisions of the proposed agreement, nor can I comment on their enforceability. I also note that I have not been provided with a copy of the proposed agreement. Nevertheless, I can state within these limitations that as you have described the proposed agreement, it appears to be generally consistent with Arkansas law. However, one of the provisions you have described is unclear and could give rise to some concern. That provision is the one addressing the distribution of fees, fines, court costs, and other monies collected as a result of prosecutions. You state that under the proposed agreement, such monies would be distributed "as if the arrests were made by a Pope County Deputy Sheriff for offenses which occurred within the county." It is not clear what this provision means.
Under state law, distribution of all fees, fines, court costs, and other monies collected as a result of prosecutions must be distributed in accordance with the state statutes governing court accounting, and the state, county, and city Administration of Justice Funds. See Ark. Const., Am. 80, § 7(C); A.C.A. § 16-10-201 through — 210, as amended by Acts 2003, No. 1185, § 47; A.C.A. § 16-10-301 through — 312, as amended by Acts 2003, No. 1185, § 48; A.C.A. § 16-10-601 through — 604, as amended by Acts 2003, No. 1185, § 56; A.C.A. § 16-17-707, as amended by Acts 2003, No. 1185, § 168. The distribution in question must be evaluated for its consistency with these provisions of state law.
Question 3 — What is the impact of Act 1032 of 2003 on the proposedagreement?
It is my opinion that Act 1032 of 2003 has no impact on the proposed agreement. That act was entitled "An Act To Require All Traffic Citations Issued Within the Boundaries of a Municipality To Be Docketed in the District or City Court of That Municipality; and for Other Purposes." The Act states in full:
 SECTION 1. (a) All traffic citations issued within the boundaries of a municipality of this state which has a district or city court shall be placed on the docket of the district or city court of that municipality, unless the presiding judge of that court authorizes a transfer to another court exercising jurisdiction over the area in which the citation was issued.
 (b) If a municipality has more than one court exercising subject matter jurisdiction over traffic citations issued within the boundaries of that municipality, then all traffic citations issued within the boundaries of that municipality shall be placed on the docket of the municipality's district or city court in the closest proximity to where the offense occurred.
Acts 2003, No. 1032.
 Act 1032 clearly permits the prosecution of offenses occurring within city limits to be carried out in either the district court or the city court of a municipality. If the City of Hector has chosen to abolish its city court pursuant to the implicit authority stated in Amendment 80, as discussed above, Act 1032 clearly permits offenses occurring within the Hector city limits to be prosecuted in the district court. This result is completely consistent with the provisions of the proposed agreement.
Accordingly, I must conclude that Act 1032 of 2003 has no impact upon the proposed agreement.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
[1] Although the General Assembly is granted the authority to abolish city courts, it has not acted to do so.
[2] I also note that the authority of cities of the second class tocreate city courts was repealed by Act 175 of 1995.